301 F.2d 462
 LIBERIAN CARRIERS, INC., Libellant-Appellant,
v.
TAMPA SHIP REPAIR & DRY DOCK CO., Inc., Respondent-Appellee.
TAMPA SHIP REPAIR & DRY DOCK CO., Inc., Libellant-Appellee,
v.
S.S. THE ALPHA and Liberian Carriers, Inc., Respondent-Appellant.
TAMPA SHIP REPAIR & DRY DOCK CO., Inc., Plaintiff-Appellee,
v.
R. J. CHIANELLI, Defendant-Appellant, and
J. F. Swenson, Defendant.
 No. 215.
 Docket 27134.
 United States Court of Appeals Second Circuit.
 Argued February 8, 1962.
 Decided March 23, 1962.
 
 Edward L. Smith, of Kirlin, Campbell & Keating, New York City, for appellants.
 Allan A. Baillie, of Healy, Baillie & Burke, New York City (Walter G. McNeill, New York City, of counsel on the brief), for appellee.
 Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.
 HAYS, Circuit Judge.
 
 
 1
 These cases, which were consolidated for trial, arise out of a contract under which Tampa Ship Repair and Dry Dock Co. Inc. agreed to sell to Liberian Carriers, Inc. certain propulsion equipment and to install the equipment in a vessel owned by Liberian. Liberian sues Tampa for damages for breach of the contract; Tampa sues Liberian for the unpaid balance on a note given to Tampa in partial payment. The third suit is by Tampa against the guarantors on Liberian's note. The decision of the lower court found for Tampa and against Liberian on all issues. We affirm.
 
 
 2
 Liberian claims defects in both the machinery and its installation. The lower court found these claims unproven. Not only do we find no clear error in the findings, but the contract upon which the claims are based provided that the work should be done "to Lloyd's approval." Since Lloyd's approval was secured, the condition of the contract was fulfilled.
 
 
 3
 Liberian claims breach of an express warranty as to the vessel's speed after re-engining. Such a warranty was included in a memorandum of understanding executed some time prior to the execution of the formal contract under which the work was done. The formal contract contained no warranty of speed. We agree with the lower court that it was the intention of the parties to integrate their entire agreement in the formal contract, and that the formal contract superseded the earlier memorandum of understanding.
 
 
 4
 Finally Liberian claims damages on the ground that the work on the vessel was not completed within the time limited in the contract. The work took 53 days. Liberian claims that Tampa agreed to complete the work in 40 days.
 
 Article 7 of the contract provides:
 
 5
 "If the Shipyard be delayed at any time in the progress of the work by any act beyond its control, not imputable to the Shipyard, or by any changes ordered in the work, then the time of completion shall be extended a like amount. Such additional time is to be agreed upon between Owner and Shipyard, in writing, at the time the delay occurs and/or at the time the change and/or extra work is authorized by Owner."
 
 
 6
 There was concededly no written agreement for any extension of time.
 
 
 7
 The question is whether the work which occasioned the delay was the result of "any changes ordered in the work." If it was so occasioned then, presumably, Tampa could have protected itself from liability under Article 7 only by having demanded the written agreement required by that Article.
 
 
 8
 However, the work was delayed not by any changes which were ordered after the execution of the contract, but by work on the inner bottom which was contemplated by the contract itself. Article 1 provides:
 
 
 9
 "Any steel work required by the Owner or Lloyds in the form of modifying existing floors, additional inner bottom plating or tank top doublers, will be done by Shipyard at an agreed extra price based on welded structure at 60¢ per pound installed and an extension of time, if required, over and above [the 40 day limit]."
 
 
 10
 While the trial court's finding on this point, i. e. that there was no delay "that was not caused by requests of the owners for extra work" is somewhat ambiguous, it is to be noted that the finding does not refer to any "changes" ordered by the owner. In fact the evidence establishes that no changes were ordered and that the "extra work" was that contemplated at the time of the execution of the contract and referred to in Article 1.
 
 
 11
 Since the delay caused by work done by Tampa under Article 1 is not the delay for which a writing is required under Article 7, the absence of a writing does not allow Liberian to recover for the delay.
 
 
 12
 Liberian's claim of commercial duress finds no support in the evidence.
 
 
 13
 Judgment affirmed.